UNITED STATES v. CHICAGO, M. & ST. P. RY. CO.

(Circuit Court, E. D. Wisconsin. July 22, 1895.)

RAILROAD ACCOUNTS—ACT OF JUNE 19, 1878—TO WHAT ROADS APPLICABLE.

The act of June 19, 1878 (1 Supp. Rev. St. 194), requiring certain reports, prescribed by the auditor of railroad accounts, to be made by railroads to which the United States have granted any loan of credit or subsidy. in bonds or lands, or which have received from the United States lands, granted to them to aid in the construction of their roads, does not apply to the railroads which were incorporated by the several states. and received from them the grants of land made to such states to procure the construction of railroads.

This was an action by the United States against the Chicago, Milwaukee & St. Paul Railway Company to recover a penalty for failure to make reports called for by the auditor of railroad accounts under the act of June 19, 1878. The defendant demurred to the complaint. Demurrer sustained.

J. H. M. Wigman, U. S. Dist. Atty., for the United States.
John W. Cary and C. H. Van Alstine, for defendant.

SEAMAN, District Judge. The complaint is founded upon the alleged liability of the defendant to the terms of an act of congress entitled "An act to create an auditor of railroad accounts, and for other purposes," approved June 19, 1878 (chapter 316, 20 Stat. 169; 1 Supp. Rev. St. 194), and is for the recovery of the penalty imposed for neglect and refusal to make certain reports required by that act. The allegations are, in substance: That the defendant is a duly incorporated railroad company, and owns and operates railroad lines in several states, some of which are named, including Minnesota and Iowa. That in Minnesota it so owns and operates railroads which were constructed by companies incorporated by said state, and with the aid of lands which were granted by acts of congress to the territory and to the state of Minnesota, to be disposed of by

its legislature for the purposes of such aid, and for no other purpose, viz.: By the Minnesota Central Railroad Company, under act of March 3, 1857 (chapter 99, 11 Stat. 195), and supplemental act of March 3, 1865 (chapter 105, 13 Stat. 526); by the Southern Minnesota Railroad Company, under the same acts; and by the Hastings & Dakota Railroad Company, under act of July 4, 1866 (chapter 168; 14 Stat. 87). That in Iowa it so owns and operates a railroad constructed by the McGregor Western (subsequently known as the McGregor & Missouri River) Railroad Company, incorporated by said state, and which was aided by lands granted by congress to said state of Iowa for such purpose, by act of May 12, 1864 (chapter 84, 13 Stat. 72). It is further alleged that the several railroads so constructed have lawfully come into the possession of the defendant, by purchase in one form and another, are operated by it, and it is clearly implied that they have become incorporated into its great system of railroads operated as an entirety; that each of said "railroad companies" named is, "in whole or in part, west, north, or south of the Missouri river, and each received from the United States lands granted to it, respectively, to aid in constructing or furnishing its said respective roads"; that thereupon it became the duty of the defendant to make certain reports prescribed by the auditor of railroad accounts under the said statute creating that office; that it had refused and neglected to comply therewith, and thereupon has become indebted to the United States in the forfeiture provided, of $1,000 to $5,000, for which judgment is demanded.

The demurrer to this complaint presents a single question, whether the act of 1878 is applicable to these Minnesota and Iowa lines of railroad, for, if the original companies were within its terms, the act provides for its extension to any successors in ownership or operation. For the interpretation of this act it is necessary to have an understanding of the course and policy of congressional legislation in granting aid for the construction of railroads throughout the great West, and especially the legislation out of which the act in question arose. An examination of this long course shows the adoption of two distinct plans for aid to railroads, which differ radically in their method and policy. By the one first adopted, lands were granted to the state or territory for its disposal in procuring the construction of a certain line or lines of railroad, leaving the method of performance and any incorporation of companies for the purpose to its legislature, and conditioned only upon the fact of performance. Of this class were all the grants in question here. In 1862 another plan was adopted for transcontinental roads of a national character, and for which national charters were granted. The Union Pacific Railroad Company was thus incorporated, and received from the government direct grant of lands and a direct issue of bonds, and the same act provided for direct grants to the Central Railroad Company of California for constructing a portion of the line. Subsequently national charters were given, with direct grants of land to the Northern Pacific, the Atlantic & Pacific, and the Texas Pacific, respectively. Each of these companies was required to make certain reports to the government, and by an act of the Fortieth congress, approved

June 25, 1868, general provision was made for more specific reports from each of these national companies, named in the act.

In 1878 the act was adopted which is here alleged as the ground of liability. Its first section provides for the repeal of each of the above-mentioned provisions respecting reports by the Pacific national companies, and the act then creates an auditor of railroad accounts, prescribes his duties and a system of reports "to be rendered to him by the railroad companies whose roads are, in whole or in part west, north, or south of the Missouri river, and to which the United States have granted any loan of credit or subsidy, in bonds or lands," and requires such report from every company which has received bonds of the United States to aid in the construction of its road, "or which has received from the United States any lands granted to it for a similar purpose." This act is clearly applicable to the roads of the last-mentioned class, to which aid was directly furnished, and good ground and practical reason for its requirements are found in both the terms and the policy of the legislation by which the aid was granted. No such reason is apparent in respect to the roads aided by the first-mentioned plan, and no reservation or restriction is found in either of the acts granting the aid in question which would even imply a purpose or right of governmental control or dictation after the roads were constructed.

Counsel for the United States bases its contention that the statute should be applied to these roads upon a literal and independent reading of its terms,—that the roads lie north of the Missouri river, and were in fact aided by grants of the public lands,—but cites no reservation of power in the general government to impose such requirement, either in the constitution or in cognate legislation, except a reference to the regulation of interstate commerce. Surely that has no application to these roads, which are wholly within the respective states of their incorporation, except so far as they have become interstate through their acquisition by the defendant and entry into its system. I do not, however, find it necessary to consider whether there is any ground upon which a power might rest for the exercise of control over these roads, if they were clearly and specially designated by the act, because I am satisfied that the terms of the act do not embrace them by any fair construction, and that they were not within the intention of congress, as disclosed by the separate courses of legislation above referred to and the recitals in this act. Neither of the roads in question is a grantee of the United States in respect to the lands which were received in aid of its construction, but the grant was directly from the state. Employing the language of this act, they were not railroad companies "to which the United States have granted any loan of credit or subsidy, in bonds or lands," or which have "received from the United States any lands granted to" the company to aid in construction. The United States granted directly to the state or territory, and not to the company. The uniform construction of similar acts—and of these particular acts in St. Paul & S. C. R. Co. v. Winona & St. P. R. Co., 112 U. S. 720, 5 Sup. Ct. 334, and subsequent cases—has been that the grant to the state was in præsenti; and the most recent expression by the su-

preme court, in Railroad Co. v. Forsythe (not yet officially reported) 15 Sup. Ct. 1020, states this rule as follows: That the acts are "to be treated both as a law and a grant, and the intent of congress, when ascertained, is to control in the interpretation of the law"; that the state was the grantee of the government, and in accepting it impliedly undertook to construct the road, and the company which it incorporated for that purpose was made the beneficiary of the grant by the act of the state, and not by the act of congress; that congress dealt only "with the state, relying upon the state as the party to see that the roads were completed, and to use its own judgment as to the manner of securing such construction." The object of these grants by the government is thus stated:

"So far as railroads are concerned, it is the thought, not merely that the general welfare will be subserved by the construction of the road along the line indicated, but, further, that such grant shall not be attended with any pecuniary loss to the United States; for the universal rule is to double the price of even sections within the granted limits."

The demurrer to the complaint is sustained, and the complaint must be dismissed.